UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

—————————————————
                               :

EDWIN TORRES                     :
                               :

     Plaintiff               :          Civil No. 05-1371 (JAP)
                               :

     v.                     :          **OPINION**
                               :
                               :

JOANNE B. BARNHART,        :
Commissioner of Social Security    :
                               :
—————————————————:

PISANO, District Judge:

Before the Court an appeal by Edwin Torres ("Plaintiff") from the Commissioner of the Social Security Administration's ("Commissioner") final decision denying his request for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Court has jurisdiction to review this matter under 42 U.S.C. §§ 405(g) and 1383(c)(3) and decides this matter without oral argument. *See* Fed. R. Civ. P. 78. As the record in this matter provides substantial evidence supporting the Commissioner's decision that Plaintiff was not disabled, the Court affirms.

**I.  PROCEDURAL HISTORY**

Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Social Security Income ("SSI") on April 15, 2003, and May 26, 2004, respectively, alleging he was disabled due to diabetes, left-eye blindness, liver problems and back pain. Initially, Plaintiff alleged a

disability onset date of November 8, 2002, the date that he lost his job, but later amended his disability onset date to April 1, 2003.  (R. 29).[1]  Plaintiff's applications were denied initially and also upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held on October 12, 2004, and the ALJ issued his decision on November 5, 2004, finding that Plaintiff was not disabled within the meaning of the Social Security Act.

Thereafter, Plaintiff filed his complaint in this matter alleging that the ALJ's decision is not based on substantial evidence.  In particular, Plaintiff argues that the ALJ's finding at step three of the requisite five-step analysis was not supported by substantial evidence.  Plaintiff further argues that the ALJ erred by improperly evaluating Plaintiff's complaints of pain, and that the ALJ's questioning of the vocational expert was defective.  As to relief, Plaintiff has requested "a new hearing, a new decision and new ALJ."  Pl. Brf. at 12.

## II.  BACKGROUND

### A.  Plaintiff's Personal Background and Work History

Plaintiff was born in Puerto Rico on January 30, 1953, and presently lives in New Jersey with his nephew and a roommate.  He has an eleventh grade education that he obtained before he came to the United States in 1972 and is literate in English.  A typical day for Plaintiff, as described by him, includes preparing an "easy" breakfast, doing some chores around the house and resting frequently.  According to Plaintiff, he does a lot of reading, watches television, visits with family and friends and attends church services when someone accompanies him.  (R. 152).

---

[1] "R." refers to the certified copy of the transcript of the record of proceedings relating to this matter filed by the Commissioner of Social Security.

2

Plaintiff worked as a melt supervisor in a foundry from January 1977 until he was terminated on November 8, 2002.  (R. 127-28).   Plaintiff testified that he was terminated from this job because of his "attitude."  (R. 52).  His work history also includes time at a ceramic factory in 1996, where he assembled heavy ceramic items such as toilet bowls, and work at a door factory in 1989 and 1990, where he assembled doors. (R. 39-40)

B.  Plaintiff's Medical History

1.  Diabetes

At the hearing before the ALJ, Plaintiff, through his counsel, represented that his diabetes was first diagnosed on March 28, 2003, and Plaintiff amended his disability onset date to coincide with the date of that diagnosis.  The medical records appear to show, however, that Plaintiff had been diagnosed with diabetes prior to either of the dates he alleged as his alleged disability onset date,[2] as Dr. Alok Goyal's records from November 2, 2002, show that Plaintiff "has a history of diabetes" and "tries to check his blood glucose frequently."  (R. 187).  These records reflect Plaintiff's diagnosis as non-insulin dependent diabetes.  (R. 188).

On March 28, 2003, Plaintiff was seen by Dr. Bonnie Davis at the Jewish Renaissance Medical Center complaining of weakness, back and rib pain, coughing, cold sweats, and increased urination and thirst.  Dr. Davis diagnosed non-insulin dependent diabetes and began Plaintiff on oral medication.  Plaintiff was seen again at the Jewish Renaissance Medical Center later that same year, and in September 2003 his diabetes medication was adjusted.

2.  Eyes

When Plaintiff was 12 years old, his cousin accidently shot him in the left eye with an

---

[2]Ultimately, this inconsistency is inconsequential to this Court's review.

arrow, leaving Plaintiff blind in that eye.  Claimant's physician, Dr. Kenneth Darrin of the Santa Marie Eye Institute, who had been treating Plaintiff since 1996, treated Plaintiff for glaucoma in his left eye beginning in 2001.  (R. 214).  Dr. Darrin reported that Plaintiff had 20/20 vision in his right eye and no light perception in his left eye.  (R. 181).  As a result of these visual limitations, Dr. Darrin opined that Plaintiff's ability to do certain work, such as driving a commercial vehicle, would be restricted.  (R. 182).

On March 26, 2003, Dr. John Hnatyko, an optometrist, examined Plaintiff and reported that Plaintiff had 20/20 vision in his right eye and no light perception in his left eye.  (R. 199). Dr. Hnatyko reported that Plaintiff suffered from glaucoma in his left eye and glaucoma was suspected in Plaintiff's right eye.  The record notes that Dr. Hnatyko referred Plaintiff to another doctor for follow-up regarding the glaucoma.

Plaintiff was seen by Omni Eye Services on April 9, 2003, complaining of pain in his left eye.  Plaintiff was diagnosed with glaucoma and early corneal decompensation.

On July 21, 2003, Dr. Darrin referred Plaintiff to clinic for possible removal of Plaintiff's left eye.  Shortly thereafter, on July 25, 2003, Plaintiff underwent surgery to remove his left eye and replace it with a prosthetic eye.  (R. 287).

3.  Liver

In November of 2002, prior to Plaintiff's disability onset date, Plaintiff was seen by Dr. Alok Goyal who noted that Plaintiff's liver function tests were abnormal.  (R. 186).  Several months later, on April 7, 2003, Plaintiff was seen by Dr. Davis at the Jewish Renaissance Medical Center who also noted abnormal liver functioning.  However, Plaintiff did not follow-up regarding this condition until August of 2003, when a hepatitis panel was ordered which showed

4

Plaintiff suffered from Hepatitis C. (R. 306).  In October 2003, Plaintiff consulted with Dr. Prem

Nandiwada for treatment of Hepatitis C and underwent a liver biopsy.  (R. 381).  Plaintiff was

found to have chronic Hepatitis consistent with viral Hepatitis C, grade 2, stage 3.  On November

25, 2003, Plaintiff began treatment consisting of Interferon injections and copegasys tablets.

Plaintiff followed-up with Dr. Nandiwada in December 2003 and March 2004, and further testing

in June 2004 revealed findings compatible with cirrhosis and probable portal hypertension.

Although Dr. Nandiwada discussed with Plaintiff that his Interferon treatment could have

possible side effects of tiredness and flu-like symptoms, Dr. Nandiwada reported in October

2004 that Plaintiff "tolerated the treatment well with no significant reported side effects."  (R.

381).

### 4.  Back and Other Joint Pain

On October 24, 2002, Plaintiff was seen by Dr. Goyal complaining of low back pain.  Dr.

Goyal diagnosed a lumbosacral strain.  On January 28, 2003, Dr. Sidney Tobias examined

Plaintiff and diagnosed Plaintiff with residuals of repetitive cervicodorsal and lumbar sprain,

chronic cervicodorsal myositis, chrnoic lumbar myositis, residuals of repetitive contusion and

sprain of both knees, and chronic tenosynovitis of both right and left knees.  (R. 273)  Dr. Tobias

opined that Plaintiff had a permanent disability of 30%.  *Id.*

On July 22, 2003, an internal consultative examination was conducted by Dr. Francky

Merlin.  (R. 220)  Dr. Merlin noted Plaintiff suffered from low back pain, but Plaintiff was able

to flex his spine 0-90 degrees and showed no paravertebral spasm.  Plaintiff's gait and station

were normal, and he had no difficulty getting up from a seated position or in getting on and off

the examination table.  Plaintiff also was able to squat and walk heel to toe.  Dr. Merlin

5

concluded that Plaintiff was able sit, stand, walk, handle objects, hear, speak and travel but should not lift or carry heavy objections, and he should avoid operating machinery and motor vehicles.

An additional internal consultative examination was conducted by Dr. Ronald Bangor on July 31, 2003.  Dr. Bangor diagnosed Plaintiff with a lumbosacral strain.  An x-ray of the lumbosacral spine showed normal vertebral body alignment and curvature and no compression fracture, bone destruction or significant arthritic changes.  Dr. Bangor noted that Plaintiff ambulated and got on and off the examination table without difficulty, got dressed and undressed without assistance.  He also observed that Plaintiff did not use a cane or crutches.  It was further noted that Plaintiff was not uncomfortable in the seated position during the interview.  Dr. Bangor reported that Plaintiff had a normal range of motion in the cervical and lower back area.

At the end of September 2003, Plaintiff was seen at the Jewish Renaissance Medical Center complaining of back pain and headaches.  A CT scan done in October 2003 of Plaintiff's back showed mild diffuse disc bulges at multiple levels.  A CT scan of his head was unremarkable.  Plaintiff was referred to Raritan Bay Medical Center where, on April 14, 2004, Plaintiff was seen by a neurosurgeon.  Plaintiff was advised that surgical intervention was not appropriate for his condition.

5.  Psychological Problems

Medical records show that Plaintiff was referred to the Raritan Bay Mental Health Center ("RBMHC"), where Plaintiff complained of problems sleeping, feeling inferior, depression, fatigue and lack of motivation.  Plaintiff was initially evaluated on September 24, 2003, by Maria Lebedynec, a Licensed Clinical Social Worker, who diagnosed Adjustment Disorder with Mixed

Anxiety and Depressed Mood.  Records from RBMHC from January 5, 2004 through July 7, 2004 show Plaintiff was prescribed medication and participated in group therapy for his condition.  Physician progress notes from January 5, 2004, noted improvement in Plaintiff's condition, specifically that Plaintiff was less depressed and fatigued and was sleeping better.  Also noted was that Plaintiff was in a "good mood."  (R. 252).  Plaintiff's diagnosis was reflected as Adjustment Disorder with Depressed Mood and Personality Disorder Not Otherwise Specified.  On January 13, 2004, records similarly reported decreasing depression and fatigue.  Plaintiff's mood as reported as "euthymic," *i.e.*, normal, not elated or depressed.[3]  (R. 251).  A similar mood was reported on January 20, 2004.  (R. 250).  On March 29, 2004, Plaintiff's mood is described as "calm," and he complains of restless sleep.  (R. 249).  By April 6, 2004, Plaintiff is sleeping better, and his physician described "only mild depression."  (R. 248).  On June 29, 2004, Plaintiff's physician reported him as "euthymic now," but noted that at times Plaintiff was "mildly depressed."  (R. 247).  The June 29th records noted for the first time a diagnosis of Bipolar II Disorder in addition to the Adjustment Disorder with Depressed Mood and Personality Disorder.

6.  Other Conditions

On March 10, 2003, at the request of Plaintiff's counsel, Dr. Malcom Hermele examined Plaintiff.  Plaintiff complained of coughing, wheezing and shortness of breath.  Dr. Hermele diagnosed Plaintiff with chronic pulmonary bronchitis and estimated a permanent pulmonary disability of 20%.  Dr. Hermele opined that Plaintiff's condition was causally related and

---

[3]Euthymic describes "a psychological state that is statistically or otherwise normal, neither elated nor depressed, or somebody in such a psychological state." *See* http://encarta.msn.com/dictionary_561538604/euthymic.html.

exacerbated by exposure to pulmonary noxious agents while at work.

Also on March 10, 2003, Plaintiff was examined by Dr. Peter Crain at the request of Plaintiff's counsel.  Plaintiff complained to Dr. Crain of frequent headaches accompanied by nausea, dizziness and blurred vision.  Plaintiff also complained of period numbness in his upper extremities.  Dr. Crain diagnosed Plaintiff with headaches due to toxic exposure at work, and estimated a neurological disability of 20%.

On August 28, 2003, a Physical Residual Functional Capacity Assessment was performed by a state agency doctor.  (R. 232)  The agency doctor concluded that as a result of Plaintiff's various conditions, Plaintiff had the RFC to occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk for about six hours in an eight hour day, sit for about six hours in an eight hour day.  The report also noted that Plaintiff had an unlimited ability to push and pull hand and foot controls and could occasionally climb ramps or stairs, balance, stoop, kneel, crouch and crawl.  The report found that Plaintiff had no manipulative or communicative limitations, but had certain visual limitations and an environmental limitation involving exposure to hazards such as machinery and heights.

## III.  LEGAL STANDARD FOR DISABILITY BENEFITS

### A.  Disability Defined

_____To be eligible for DIB and SSI benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382(a)(3)(A).  A person is disabled for these purposes only if his

physical and mental impairments are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy…"  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A).

B.  The Five-Step Analysis for Determining Disability

Social Security regulations set forth a five-step, sequential evaluation procedure to determine whether a claimant is disabled.  20 C.F.R. § 404.1520.  For the first two steps, the claimant must establish (1) that he has not engaged in "substantial gainful activity" since the onset of his alleged disability, and (2) that he suffers from a "severe impairment" or "combination of impairments."  20 C.F.R. § 404.1520(a)-(c).  Given that the claimant bears the burden of establishing these first two requirements, his failure to meet this burden automatically results in a denial of benefits, and the court's inquiry necessarily ends there.  *Bowen v. Yuckert*, 482 U.S. 137, 146-47 n. 5 (1987) (delineating the burdens of proof at each step of the disability determination).

If the claimant satisfies his initial burdens, he must provide evidence that his impairment is equal to or exceeds one of those impairments listed in Appendix 1 of the regulations ("Listing of Impairments").  20 C.F.R. § 404.1520(d).  Upon such a showing, he is presumed to be disabled and is automatically entitled to disability benefits.  *Id*.  If he cannot so demonstrate, the benefit eligibility analysis requires further scrutiny.

The fourth step of the analysis focuses on whether the claimant's residual functional capacity sufficiently permits him to resume his past relevant work.  20 C.F.R. § 404.1520(e)-(f).  Again, the burden lies with the claimant to show that he is unable to perform his past work.

*Fargnoli v. Halter*, 247 F.3d 34, 39 (3d Cir. 2001). If the claimant is found to be capable to return to his previous line of work, then he is not "disabled" and not entitled to disability benefits. *Id*. Should the claimant be unable to return to his previous work, the analysis proceeds to step five.

At step five, the burden shifts to the Commissioner to demonstrate that the claimant can perform other substantial, gainful work. 20 C.F.R. § 404.1520(f); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987). If the Commissioner cannot satisfy this burden, the claimant is "disabled" and will receive social security benefits. *Yuckert*, 482 U.S. at 146-47 n.5.

## C.  The Record Must Provide Objective Medical Evidence

Under the Act, proof of a disability requires objective medical evidence. "An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A). Additionally, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section." *Id*. Specifically, a finding that one is disabled requires:

> medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonable be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph... would lead to a conclusion that the individual is under a disability.

*Id*.; *see* 42 U.S.C. § 1382c(a)(3)(A) (defining a disabled person as one who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . ."). Furthermore, a claimant's symptoms, "such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect . . . [one's] ability to do basic work

10

activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present."  20 C.F.R. § 404.1529(b); *see Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) (rejecting claimant's argument that ALJ failed to consider his subjective symptoms where ALJ made findings that complaints of pain and symptoms were inconsistent with objective medical evidence and claimant's hearing testimony); *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992) (denying claimant benefits where claimant failed to proffer medical findings or signs that he was unable to work); *Green v. Schweiker*, 749 F.2d 1066, 1069-70 (3d Cir. 1984) (emphasizing that "subjective complaints of pain, without more, do not in themselves *constitute* disability").

## IV.  STANDARD OF REVIEW

_____The district court is vested with "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  Section 405(g) of the Act additionally provides that "the findings of the Commissioner of Social Security as to any fact, if supported by *substantial evidence*, shall be conclusive…"  42 U.S.C. § 405(g) (emphasis added), 42 U.S.C. § 1383(c)(3); *see also Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992), *cert. denied sub nom. Williams v. Shalala*, 507 U.S. 924 (1993); *Stunkard v. Secretary of Health & Human Serv.*, 841 F.2d 57, 69 (3d. Cir. 1988).  Accordingly, a reviewing court *must* uphold the Commissioner's factual decisions if they are supported by "substantial evidence."  *Williams*, 970 F.2d at 1178 (emphasis added).

"Substantial evidence" means more than "a mere scintilla."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion." *Id.* The inquiry is not whether the reviewing court would have made the same determination, but rather whether the Commissioner's conclusion was reasonable. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Thus, substantial evidence may be slightly less than a preponderance. *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988). Some types of evidence will not be "substantial." For example,

> [a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g. that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion.

*Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).

While a reviewing court shall give deference to administrative decisions, *see Schaudeck v. Commissioner*, 181 F.3d 429, 431 (3d Cir. 1999), its "substantial evidence" review cannot be fairly conducted without some indication that the ALJ has evaluated all the relevant evidence. *Cotter v. Harris*, 642 F.2d 700, 705-06 (3d Cir. 1981). Therefore, an administrative decision should provide a "clear and satisfactory explanation of the basis on which it rests." *Id.* at 704. When the record shows conflicting evidence, the ALJ "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." *Ogden v. Bowen*, 677 F. Supp. 273, 278 (M.D. Pa. 1987). For instance, when an ALJ decides that a social security claimant is capable of working, the ALJ must consider all evidence and explain the weight given to probative exhibits. *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978).

Moreover, the reviewing court does have a duty to review the entire record to determine whether the ALJ's findings are rational and supported by substantial evidence. *See Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). In order to do so, "a court must 'take into account

12

whatever in the record fairly detracts from its weight.'"  *Schonewolf v. Callahan*, 972 F. Supp.

277, 284 (D.N.J. 1997) (quoting *Willibanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301,

303 (6th Cir. 1988) (internal citation omitted).   The Commissioner has a corresponding duty to

facilitate the court's review: "[w]here the [Commissioner] is faced with conflicting evidence, he

must adequately explain in the record his reasons for rejecting or discrediting competent

evidence."  *Ogden v. Bowen*, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing *Brewster v. Heckler*,

786 F.2d 581 (3d Cir. 1986)).   As the Third Circuit has held, access to the Commissioner's

reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained
> the weight he has given to obviously probative exhibits, to say that his decision is
> supported by substantial evidence approaches an abdication of the court's duty to
> scrutinize the record as a whole to determine whether the conclusions reached are
> rational.

*Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (quoting *Arnold v. Sec'y of Health, Educ.*

*& Welfare*, 567 F.2d 258, 259 (4th Cir. 1977)).   Nevertheless, the district court is not

"empowered to weigh the evidence or substitute its conclusions for those of the fact-finder."

*Williams*, 970 F.2d at 1182 (citing *Early v. Heckler*, 743 F.2d 1002, 1007 (3d Cir. 1984)).

## V.  DISCUSSION

### A.  The ALJ's Decision

In his decision (R. 16-26), the ALJ properly followed the requisite sequential evaluation

and considered all relevant evidence put before him.   The decision includes evaluation of

Plaintiff's subjective complaints as well as the various medical reports related to his medical

conditions.

At step one of the sequential evaluation, the ALJ determined that Plaintiff had not

engaged in any substantial gainful activity since his alleged onset date.   At step two, the ALJ

13

concluded that the evidence established the existence of "severe" impairments, specifically, "left-eye blindness, diabetes, hepatitis C and cirrhosis, degenerative disc disease of the lumbar spine, bronchitis and depression." (R. 20). Although the ALJ found Plaintiff's impairments to be severe, the ALJ found at step three that the evidence did "not disclose any medical findings which meet or equal in severity the clinical criteria of any impairment listed in Appendix I, Subpart P to Regulations No. 4." *Id.* Specifically, the ALJ found that

> The claimant's left-eye blindness does not meet Section 2.02 because the claimant's vision in his right eye is 20/20. The claimant's diabetes fails to meet 9.08 because this disease is adequately controlled with pharmacological therapy and there is no evidence of end organ damage. The claimant's Hepatitis C fails to meet 5.05 because subsections A through F of this listing has not been satisfied. With respect to claimant's spinal impairments, the requirements of listing 1.04 have not been met because the evidence fails to demonstrate the existence of a "herniated nucleus pulposis, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, or vertebral fracture" which results in the compromise of a nerve root or the spinal cord along with the requirement of A, B. or C of this listing. The claimant's depression fails to meet the requirements of section 12.04 because the claimant's symptoms have improved with treatment and the evidence fails to establish at least two marked limitations in the "B" criteria as mandated by this listing.

The ALJ evaluated the medical evidence and also considered Plaintiff's subjective complaints of disabling pain and other symptoms and limitations. The ALJ found Plaintiff's complaints to be inconsistent with the objective medical evidence and Plaintiff's reported activities of daily living. Recognizing that Plaintiff suffers some pain and limitations as a result of his impairments, however, the ALJ concluded that Plaintiff could perform the only the demands of "light work," *see* 20 C.F.R. § 404.1567(b), in an environment free from excessive pulmonary irritants. Pursuant to regulation, light work involves, for example, lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.

*Id.* As Plaintiff's past relevant work in a foundry involved lifting and carrying in excess of fifty pounds and being exposed to fumes emanating from melting metal, the ALJ found at step four that Plaintiff was not capable of performing past relevant work.

The analysis, therefore, proceeding to step five, where the burden shifted to the Social Security Administration to show that there were other jobs existing in the national economy that Plaintiff could perform. Because the ALJ determined that Plaintiff was not capable of performing the full range of light work, a vocational expert was called upon to assist in determining whether there were a significant number of jobs in the national economy that Plaintiff was capable of performing. The expert considered Plaintiff's age, education and work experience, as well has his residual functional capacity for lifting and carrying objects weighing up to 20 pounds, frequently lifting and carrying objects weighing up to 10 pounds, sitting, walking and standing up to 6 hours per day, pushing and pulling controls, not using binocular vision, and not being exposed to heights, dangerous machinery or pulmonary irritants. The expert testified that in the local region there were a significant number of jobs Plaintiff could perform, such as garment sorter, scale operator, produce weigher and labeling machine operator. Crediting the expert testimony, the ALJ concluded at step five that there were a significant number jobs in the national economy that Plaintiff could perform. Therefore, the ALJ found Plaintiff not disabled under the Social Security Act.

B. The Third Step of the Sequential Evaluation

Plaintiff challenges the ALJ's analysis at step three of the evaluation. Specifically, Plaintiff argues that (1) the ALJ failed to make a comparison between the combination of Plaintiff's impairments and the listings (citing *Burnett v. Commissioner*, 220 F.3d 112 (3d. Cir.

2000) and *Cotter v. Harris*, 642 F.2d 700 (3d. Cir. 1981); and (2) the ALJ's analysis at this step was inadequate regarding Plaintiff's liver condition and his psychiatric condition.  Plaintiff also argues that he meets the liver listing at 5.05F.

Plaintiff is correct that the ALJ must consider his impairments in combination.  *See* 20 C.F.R. 404.1526 ("If you have a combination of impairments, no one of which meets a listing . . . we will compare your findings with those for closely analogous listed impairments.  If the findings related to your impairments are at least of equal medical significance to those of a listed impairment, we will find that your combination of impairments is medically equivalent to that listing.")  However, Plaintiff errs in alleging that the ALJ did not consider the impairments in combination.  The ALJ reviewed the medical evidence and Plaintiff's testimony and found that "the evidence establishes the existence of a 'severe' impairment involving left-eye blindness, diabetes, hepatitis C and cirrhosis, degenerative disc disease of the lumbar spine, bronchitis, and depression, but does not disclose any medical findings which meet or equal in severity the clinical criteria of any impairment listed in Appendix 1, Subpart P to Regulations No. 4."  (R. 20).  Consequently, the ALJ fulfilled his responsibility to evaluate Plaintiff's impairments in combination.  *See Davis v. Commissioner*, No. 03-4029, 05 Fed. Appx. 319 (June 9, 2004) (finding that the ALJ fulfilled obligation to consider combination of impairments where ALJ reviewed evidence and concluded that "[t]he medical evidence indicates that the claimant's impairments are not severe enough to meet or medically equal one of the impairments listed in Appendix 1.")

Plaintiff challenges the ALJ's findings with regard to Listings 5.05 and 12.04.  Plaintiff states that he "equals 5.05F because a needle biopsy of his liver confirmed chronic liver disease,

16

because Plaintiff suffers from hepatic cell necrosis/inflammation for more than three months and because Plaintiff's enzymes and blood work clearly show hepatic dysfunction." Pl. Brf. at 15. In support of his argument, Plaintiff cites a blood test taken on April 22, 2004, and points to the low counts for white and red blood cells and platelets (R. 371). Plaintiff also points to a written prescription for a blood test upon which "dx: anemia" is written. (R. 372).

The listing to which Plaintiff refers requires Plaintiff to show chronic liver disease by liver biopsy as well as "[h]epatic cell necrosis or inflammation, persisting for at least 3 months, documented by repeated abnormalities of prothrombin time and enzymes indicative of hepatic dysfunction." 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Listing 5.05(F)(3)). Medical records show that each time Plaintiff's prothrombin time was measured it was within normal limits (R. 282, 352), therefore, Plaintiff has not met the listing. Further, Plaintiff has not shown how the decreased blood count he cites is indicative of "[h]epatic cell necrosis or inflammation" so as to support a finding of medical equivalence to Listing 5.05F. 20 CFR 404.1526.

With respect to Listing 12.04, Plaintiff challenges the ALJ's finding that Plaintiff did not meet subparagraph B of the Listing. Subparagraph B requires that a Plaintiff show at least two of the following:

    1. Marked restriction of activities of daily living; or

    2. Marked difficulties in maintaining social functioning; or

    3. Marked difficulties in maintaining concentration, persistence, or pace; or

    4. Repeated episodes of decompensation, each of extended duration;

20 C.F.R. Pt. 404, Subpt. P, App. 1 (Listing 12.04). The ALJ found that the evidence did not establish "at least two marked limitations" as mandated by the Listing. (Tr. 20). Plaintiff points

to no evidence in the record contrary to the ALJ's finding, but rather simply complains that the

ALJ's analysis with respect to this listing was insufficient.  However, in his opinion, the AJL

notes that

> In September 2003, the claimant was referred to the Raritan Bay Mental Health
> Center, where he was diagnosed with an adjustment disorder with mixed anxiety
> and depressed mood. . . . A mental status examination indicated that the
> claimant's concentration and memory were intact, and there was no indication that
> he had difficulty sustaining concentration.  He was treated with therapy and
> medication management with improvement in his symptoms.
>
>                     \* \* \*
>
> In the instant case, the evidence regarding the claimant's mental impairments
> establishes that the claimant has suffered from an affective disorder within the
> meaning of medical listing 12.04A1 of Appendix 1, Subpart P, Regulations No. 4.
> With respect to the applicable B criteria of such listings, the evidence establishes
> that the claimant experiences functional limitations, when performing simple
> repetitive tasks, of: mild restrictions of activities of daily living; mild difficulties
> in maintaining social functioning; mild deficiencies of concentration, persistence
> or pace; and no episodes of decompensation.

(R. 20-21)  Consequently, the Court finds that the ALJ's analysis is not beyond meaningful

judicial review.  Further, no medical professional found that Plaintiff had any marked restriction

in his daily activities, in his social functioning or in maintaining concentration, nor are repeated

episodes of decompensation of extended duration reflected in the record.  As such, the ALJ's

determination with respect to Listing 12.04 shall be sustained.

C.  Plaintiff's Subjective Complaints

       Plaintiff argues that the ALJ failed to give credence to his subject complaints of pain and

limitations.  The ALJ recognized that Plaintiff "may experience some pain and discomfort from

his condition," but found Plaintiff's subjective complaints to be in excess of what could

reasonably be expected based on his daily activities, his medical condition, and the objective

medical evidence.  (Tr. 21).  In particular, the ALJ pointed to the fact that Plaintiff reported that

his daily activities include making coffee, reading, watching television, visiting with family and

friends, occasionally assisting with household chores, and attending church services.  (R. 21).

Plaintiff also indicated that he is able to take care of his personal needs, shop with assistance and

walk up to five blocks.  *Id.*

        "[A] plaintiff bears the burden of demonstrating that [his] subjective complaints were

substantiated by medical evidence."  *Alexander v. Shalala*, 927 F.Supp. 785, 795 (D.N.J.1995),

*aff'd* 85 F.3d 611 (3d Cir.1996) (citation omitted).  In the present case, the relevant medical

evidence did not support Plaintiff's subjective complaints of disabling pain and limitations to the

extent that he alleged.  Plaintiff refers to his psychiatric condition and alleges that it caused him

to lose his job, but Plaintiff testified at the hearing before the ALJ that he was fired as a result of

his "attitude."  (R. 52).  There is simply nothing in the record supporting Plaintiff's claim that he

was fired as a result of his psychiatric conditions.  Additionally, medical records from Raritan

Bay Mental Health Center show steady improvement in Plaintiff's condition with treatment, and

Plaintiff's physician refers to his depression as "mild."  (R. 247-248).

        The medical evidence is similar with regard to Plaintiff's physical conditions.  For

example, Dr. Merlin found that despite suffering from some low back pain, Plaintiff had a full

range of motion in his spine and showed no paravertebral spasm.  (R. 220).  Dr. Merlin as well as

Dr. Bangor noted that Plaintiff ambulated and got on and off the exam table without difficulty.

Dr. Bangor observed that Plaintiff did not use a cane or crutches.  Although Plaintiff did walk

with the assistance of a cane when he appeared for the hearing with the ALJ, he testified that the

cane was not prescribed by any doctor.  Also, in his brief, Plaintiff refers to his treatment with

Inteferon, which he describes as "a drug so potent that it literally fatigues people for days on end." Pl. Br. at 9. However, Plaintiff's medical records show Plaintiff tolerated the drug well and experienced no significant side effects. (R. 381).

Consequently, the ALJ reasonably concluded that Plaintiff's subjective complaints of disabling pain and limitations were not credible. Plaintiff's contention that the ALJ did not properly evaluate his subjective claims is unfounded. Accordingly, the ALJ's decision is supported by substantial evidence.

D.  Residual Functional Capacity Assessment

Plaintiff challenges the ALJ's findings with respect to Plaintiff's residual functional capacity ("RFC") for light work as "unexplained." Pl. Br. at 22. The ALJ found that Plaintiff "retains the residual functional capacity to perform work lifting and carrying objects weighing up to 20 pounds; frequently lifting and carrying objects weighing up to 10 pounds; standing, walking and sitting up to six hours in an eight-hour day; pushing and pulling arm and leg controls; not requiring binocular vision, not involving exposure to heights or dangerous machinery; in an environment free of excessive pulmonary irritants; involving no greater than simple, repetitive tasks." (R. 22). Contrary to Plaintiff's assertions, the ALJ's findings are not "unexplained," and the ALJ's discussion and analysis in this regard were sufficient and permits meaningful judicial review. *Burnett*, 220 F.3d at 119-20; *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). In his analysis, the ALJ states which evidence he gave particular weight to and which he discounted, and explained his reasons. *See, e.g.*, R. 22-23 (the ALJ explains that he partially adopted the opinions of the state agency physicians as "highly qualified and . . . experts in Social Security disability evaluation," and gave no significant weight to the Worker's Compensation

20

doctors because, *inter alia*, their assessments were not supported by the objective medical evidence.).  The ALJ "does not need to use particular language or adhere to a particular format in conducting his analysis." *Jones*, 364 F.3d at 505.  Moreover, the Court finds, based on the medical evidence -- in particular, the opinions of the state agency physicians -- that the ALJ's RFC finding is supported by the substantial evidence.

E.  Questioning of Vocational Expert

Plaintiff argues that the ALJ's questioning of the vocational expert was improper, specifically, that the ALJ's hypothetical questions to the vocational expert violated the requirement that hypothetical questions "must reflect all of the claimant's impairments supported by the record." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir.1987).  If "an ALJ poses a hypothetical question to a vocational expert that fails to reflect 'all of the claimant's impairments that are supported by the record ... it cannot be considered substantial evidence.'" *Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir.2004). (quoting *Chrupcala*, 829 F.2d at 1276).

In this case, the ALJ asked the vocational expert whether jobs existed in the national economy for an individual with the following RFC: "lifting and carrying objects weighing up to 20 pounds; frequently lifting and carrying objects weighing up to 10 pounds; standing, sitting, and walking up to six hours in an eight hour day; pushing and pulling arm and leg controls; not requiring binocular vision; not . . . involving exposure to heights or dangerous machinery in an environment free of excessive pulmonary irritants."  (Tr. at 76).  The ALJ also questioned the expert about the existence of jobs for an individual with every complaint and functional limitation that Plaintiff complained of.  (R. 77).

Although Plaintiff asserts that the first hypothetical question posed by the ALJ does not

21

adequately reflect his limitations, it is clear that the hypothetical directly tracks the ALJ's RFC finding. Plaintiff's argument, therefore, is essentially an argument that the ALJ's determination of his RFC is not supported by substantial evidence. *See Rutherford v. Barnhart*, 399 F.3d 546, 554 n.8 (3d Cir. 2005). Because the hypothetical question to the vocational expert reflected the Plaintiff's RFC, and, as discussed above, the substantial evidence in the record supports the ALJ's RFC finding, this Court shall sustain the ALJ's decision.

## VI.  CONCLUSION

For the foregoing reasons, the Court concludes that substantial evidence supports the ALJ's factual findings and thus affirms the Commissioner's final decision denying Plaintiff Supplemental Security Income and Disability Insurance Benefits. An appropriate order accompanies this opinion.

/s/ Joel A. Pisano

JOEL A. PISANO, U.S.D.J.

Date: February 23, 2006